Jeffrey D. Eisenberg (4029)
Ryan M. Springer (9942)
**EISENBERG LOWRANCE**
**LUNDELL LOFGREN**
1099 W. South Jordan Parkway
South Jordan, Utah 84095
Telephone: (801) 464-6464
Facsimile: (801) 254-0303
Email: jeisenberg@3law.com
       rspringer@3law.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| SUSAN RICHARDS, RAY RICHARDS, JIMMY RICHARDS, PAULA RICHARDS KRISTENSEN, JARED RICHARDS, and KIMBERLY RICHARDS, Individually and on Behalf of the Heirs and Estate of JAMES E. RICHARDS,<br><br>Plaintiffs,<br><br>vs.<br><br>BEAVER CITY; BEAVER VALLEY HOSPITAL; OLYMPUS HEALTH, INC. *dba* HOLLADAY HEALTHCARE CENTER; MARY JEAN WALKER, APRN; ENSIGN HEALTHCARE, INC.; ENSIGN SERVICES, INC.; THE ENSIGN GROUP, INC.; MATTHEW CHURCH, and DOES I-X,<br><br>Defendants. | **COMPLAINT AND JURY DEMAND**<br><br><br>Case No. _____ |

Plaintiffs, SUSAN RICHARDS, RAY RICHARDS, JIMMY RICHARDS, PAULA

RICHARDS KRISTENSEN, JARED RICHARDS, and KIMBERLY RICHARDS, Individually

and on Behalf of the Heirs and Estate of JAMES E. RICHARDS, by and through counsel, file this Complaint and Demand for Jury Trial against Defendants, BEAVER CITY, BEAVER VALLEY HOSPITAL; OLYMPUS HEALTH, INC. *dba* HOLLADAY HEALTHCARE CENTER; MARY JEAN WALKER, APRN; ENSIGN HEALTHCARE, INC.; ENSIGN SERVICES, INC.; THE ENSIGN GROUP, INC.; MATTHEW CHURCH, and DOES I-X, for depriving and/or conspiring to deprive James Richards of rights secured under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1396r, *et seq.*, the Federal Nursing Home Regulations found in 42 C.F.R. § 483, *et seq.,* and the Constitution of the United States of America, under color of state law, pursuant to 42 U.S.C. § 1983.

**Nature of Action**

1. This is a civil rights action seeking redress for violations of Mr. Richards' rights under the United States Constitution and the laws of the State of Utah. Plaintiffs allege that Beaver City, through its officials and employees, engaged in actions that deprived Mr. Richards of rights secured by the Constitution and laws of the United States including the Omnibus Budget Reconciliation Act of 1987, the Federal Nursing Home Reform Act, and the Federal Nursing Home Regulations found at 42 C.F.R. § 483, including, but not limited to:

    a. The right to reside and receive services with reasonable accommodation of individual needs and preferences (42 U.S.C. § 1396r(c)(1)(A)(v)(i)); and

    b. The right to be informed of changes in their condition or treatment and the right to participate in planning their care (42 U.S.C § 1396r(c)(1)(A)(i)).

2. This action is brought under 42 U.S.C. § 1983 to redress the violation of James Richards' constitutional rights and federal statutory rights as guaranteed by the Federal Nursing

Home Reform Act (FNHRA), 42 U.S.C. § 1396r, its regulations (42 C.F.R. § 483, et seq.), and the Fourteenth Amendment's Due Process Clause.

3. Plaintiffs seek compensatory and punitive damages against Beaver City, Beaver Valley Hospital, Holladay Healthcare Center, its corporate affiliates, and responsible personnel for their actions in depriving Mr. Richards of proper medical care, engaging in exploitative financial practices, and failing to prevent the preventable death of Mr. Richards from septic shock due to fecal impaction.

## Jurisdiction & Venue

4. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

5. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in Salt Lake City, Utah, within this Court's jurisdiction.

## Parties

7. Plaintiff Susan Richards is the Personal Representative of the Estate of James Richards and brings this action individually and on behalf of Mr. Richards' estate and surviving family members, RAY RICHARDS, JIMMY RICHARDS, PAULA RICHARDS KRISTENSEN, JARED RICHARDS, and KIMBERLY RICHARDS.

8. At the time of his death, James Richards resided in Salt Lake County, State of Utah.

9. The facility commonly known as Holladay Healthcare Center is a for-profit, long-term care, skilled nursing facility, located in Holladay, Utah.

10. Defendant Beaver City is a municipal corporation that operates over forty nursing homes throughout Utah, including Holladay Healthcare Center, and is responsible for ensuring compliance with state and federal healthcare regulations.

11. Defendant Beaver Valley Hospital is a non-state governmental entity that holds the license for Holladay Healthcare Center and has the responsibility for overseeing its compliance with healthcare regulations and for ensuring that patient funds are properly allocated to resident care.

12. Defendant Olympus Health, Inc. dba Holladay Healthcare Center is a wholly owned subsidiary of a privately held nursing home management company headquartered in San Juan Capistrano, California. At all times relevant to this case, Olympus Health, Inc. dba Holladay Healthcare Center has been under contract with Beaver City and Beaver Valley Hospital to manage and operate Holladay Healthcare Center.

13. Defendant Ensign Healthcare, Inc., was, at all relevant times, a corporation incorporated pursuant to the laws of the State of Delaware and registered as a foreign corporation under the laws of the State of Utah, with its principal office located at 29222 Rancho Viejo Rd., Ste #127, San Juan Capistrano, California.

14. Defendant Ensign Services, Inc. was, at all relevant times, a corporation incorporated pursuant to the laws of the State of Nevada, with its principal office located at 29222 Rancho Viejo Rd., Ste #127, San Juan Capistrano, California, and a wholly owned subsidiary of Defendant The Ensign Group, Inc.

15. Defendant Ensign Services, Inc. was contracted to provide, *inter alia*, information technology, human resources, vendor management, facility management services, and medical billing services to Holladay Healthcare Center.

16. Defendant The Ensign Group, Inc. was, at all relevant times, a corporation incorporated pursuant to the laws of the State of Delaware, with its principal office located at 29222 Rancho Viejo Rd., Ste #127, San Juan Capistrano, California.

17. Defendants Beaver City, Beaver Valley Hospital, Ensign Healthcare, Inc., Ensign Services, Inc., and The Ensign Group, Inc. owned and operated Holladay Healthcare Center, that control the operations of Holladay Healthcare Center and are responsible for policies, practices, and procedures.

18. Defendant Mary Jean Walker, APRN is a nurse practitioner who was responsible for Mr. Richards' care and who acted under the color of state law when providing substandard medical treatment.

19. Defendant Matthew Church was an administrator or executive responsible for the overall operations of Holladay Healthcare and for oversight of the financial practices at the facility.

20. At all times relevant hereto, as the license holder, Beaver Valley Hospital was responsible for the policies, procedures, practices, supervision, training, implementation, and conduct of all matters pertaining to Holladay Healthcare Center, and was responsible for the financial decisions regarding appointment, hiring, training, supervision and conduct of all personnel, including staff-to-resident ratios.

21. At all times relevant hereto, the governmental entity Defendants were responsible for enforcing the rules of Holladay Health Care, and for ensuring that personnel employed in the

facility obey the Constitution and laws of the United States and the State of Utah.

22. Defendants DOES 1-10 are individuals or entities whose identities are currently unknown to Plaintiff, who were responsible in some manner for the negligent acts and omissions described herein.

23. At all relevant times, Defendants were acting as alter egos of, or joint venturers with, one another. Defendants were at all times acting within the purpose and scope of such agency, servitude, joint venture, alter ego, partnership or employment, and the acts and omissions alleged herein were generally directed toward the accomplishment of objectives within the scope of the employee's duties and authority, or reasonably incidental thereto.

24. Upon information and belief, at all material times, each of the Defendants was an agent, ostensible agent, servant, employer, employee, joint venture, partner and/or alter ego of one or more of each of the remaining Defendants.

## Facts Common to All Causes of Action

25. Plaintiffs refer to and incorporate the preceding paragraphs as though set forth fully herein.

26. On March 20, 2023, Mr. Richards was admitted to Holladay Healthcare Center following a right above-knee amputation (AKA) at the VA Hospital. His medical history included diabetes, chronic kidney disease, heart failure, and neuropathy, conditions requiring careful monitoring, hydration, and nutrition.

27. To manage constipation, Mr. Richards was prescribed MiraLAX and Bisacodyl suppositories, but he was also receiving opioid pain medications, which are known to cause severe constipation. Despite his poor oral intake and low fluid consumption, Holladay Healthcare failed

to intervene appropriately.

28. On March 31, 2023, Mr. Richards complained of rectal pain. Nurse Practitioner Mary Jean Walker noted a large amount of stool in his rectum and signs of colonic dysfunction but discontinued MiraLAX and Senna without providing an effective alternative.

29. By April 1-3, 2023, Mr. Richards' oral intake had dropped to zero, and his fluid intake fell to dangerously low levels (as little as 20cc on April 3). On April 2, he developed +3 non-pitting edema in his right AKA stump, indicating fluid retention and worsening organ function.

30. On April 3, he showed severe hypotension (BP 84/41 at 05:36, BP 92/58 at 10:07) and confusion (documented by physical therapy at 13:18 and nursing staff at 14:43). Despite these critical warning signs, Holladay Healthcare failed to notify a physician or arrange a hospital transfer.

31. At 18:42, Nurse Walker documented a 35-pound weight gain, a swollen, distended abdomen, and shortness of breath requiring oxygen, yet no immediate transfer was ordered. Mr. Richards was only taken to the VA Hospital at 22:41—after his wife demanded an ambulance. By then, he had entered septic shock and respiratory failure.

32. At VA Hospital, Mr. Richards was diagnosed with septic shock, acute hypoxic respiratory failure, severe electrolyte imbalances, acute kidney failure, and Clostridium perfringens bloodstream infection due to fecal impaction. Imaging confirmed stercoral colitis (severe colon inflammation caused by impaction). Despite emergency disimpaction, antibiotics, and intensive care, Mr. Richards died on April 5, 2023, at 23:09. His official cause of death was septic shock due to gram-positive bacteremia caused by fecal impaction.

33. Holladay Healthcare's failure to monitor, timely intervene, and transfer Mr. Richards to a higher level of care resulted in his preventable deterioration and death.

34. Defendants failed to allocate sufficient resources to staffing, resulting in chronic understaffing that directly compromised the care provided to Mr. Strand and other residents.

35. The Centers for Medicare & Medicaid services requires a minimum of 3.48 HPPD. A CMS study shows that sufficient staffing should be at least 4.1 HPPD.

36. Holladay Healthcare was seriously understaffed during the week of Richard's death. The highest hours per patient day metric was 2.88 hours per patient day on March 27, 2023. In quarter one of 2023, the average was 2.67 hours per patient day. Quarter two averaged 2.65.

37. Defendants allocated a disproportionately high percentage of resources to administrative expenses, while simultaneously underfunding direct care staffing, creating a system where residents' basic needs could not be adequately met.

38. Defendants failed to invest adequately in staff training, resulting in poorly trained staff who were unable to provide appropriate catheter care and recognize the signs and symptoms of urinary tract infections, directly contributing to Mr. Richards' decline and death.

39. Defendants engaged in questionable related party transactions, diverting funds away from resident care and contributing to the facility's chronic understaffing and inadequate resources, including transactions with related organizations as defined in CMS Pub. 15-1, chapter 10, and identified herein as Defendants DOES 1-10.

40. Defendants allocated an excessive amount of resources to "home office costs," draining funds that could have been used to hire more staff and provide better care to residents like Mr. Richards.

## Claims for Relief

## Count I: Deprivation of Rights Under Color of State Law (42 U.S.C. § 1983)

41. Plaintiffs refer to and incorporate the preceding paragraphs as though set forth fully herein.

42. Defendant Beaver City is a municipal corporation chartered by the State of Utah, and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Utah]," as that term is used in 42 U.S.C. § 1983.

43. Defendant Beaver Valley Hospital dba Holladay Healthcare Center is a component unit of Defendant Beaver City,[1] and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Utah]," as that term is used in 42 U.S.C. § 1983.

44. Beaver City is designated as the non-state governmental entity responsible for facilitating the participation of Beaver Valley Hospital in the Non-State Government Owned Nursing Facility Upper Payment Limit (UPL) program under the contract with the Utah Department of Health and Human Services ("DHHS" or the "Department"). As a party to the

---

[1] Section 2.1 of the Beaver City Municipal Code enacts "The Beaver City, Utah, Hospital Ordinance." The ordinance recognizes a previously constructed Beaver City Hospital, which is "owned and operated as provided by the provisions of Utah Code Annotated section 10-8-90." Section 2.1.3 of the ordinance creates a seven-member "Beaver City Hospital Board, consisting of seven (7) members, one of whom shall be the Mayor and six (6) of whom shall be appointed for the purpose of supervision, administration and management of the Beaver City Hospital."

When the municipal code was enacted in 1982, Utah Code Ann. § 10-8-90 was a single section, stating "Each city of the third, fourth, or fifth class and each town of the state is authorized to construct, own, and operate hospitals and to join with other cities, towns, and counties in the construction, ownership, and operation of hospitals." In 2017, following a Utah State legislative audit (https://le.utah.gov/audit/17_10rpt.pdf)  a superseding section was enacted requiring "a hospital under Subsection (1) that owns a nursing care facility regulated under Title 26B, Chapter 2, Part 2, Health Care Facility Licensing and Inspection, and uses an intergovernmental transfer as that term is defined in Section 26B-3-130 may not enter into a new agreement or arrangement to operate a nursing care facility in another city, town, or county without first entering into an agreement under Title 11, Chapter 13, Interlocal Cooperation Act, or other contract with the other city, town, or county to operate the nursing care facility."

agreement, Beaver City acts as an intermediary between Beaver Valley Hospital and the Department to ensure compliance with federal and state requirements governing the UPL program. Beaver City's role includes oversight of the financial arrangements and operational compliance necessary for Beaver Valley Hospital to receive enhanced Medicaid reimbursements through the UPL program.

45. Under the terms of the contract, Beaver City is obligated to provide funding necessary to support its participation in the UPL program. This includes transferring funds to DHHS to facilitate federal matching payments, which are subsequently distributed to Beaver Valley Hospital. Additionally, Beaver City must ensure that all financial transactions comply with applicable federal regulations, including those governing Medicaid reimbursements. The contract specifies that Beaver City must maintain accurate records of all payments and expenditures related to its role in the program, subject to audit by state or federal authorities.

46. Beaver City is required to adhere to strict compliance and reporting obligations under the contract. These obligations include ensuring that Beaver Valley Hospital meets all licensure, regulatory, and operational requirements for participation in the UPL program. Beaver City must also disclose any conflicts of interest involving its officials or representatives in relation to DHHS or State of Utah. Furthermore, Beaver City is responsible for submitting timely reports documenting its compliance with program requirements and detailing its financial contributions to the UPL program.

47. Defendant Olympus Health, Inc. manages Holladay Healthcare Center as an agent of Beaver City and Beaver Valley Hospital and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Utah]," as that term is used in 42 U.S.C.

§ 1983.

48. Defendant Ensign Services, Inc. operates, manages, and/or employs the facility staff of Holladay Healthcare Center as an agent of Beaver City and Beaver Valley Hospital, and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Utah]," as that term is used in 42 U.S.C. § 1983.

49. The 1987 Omnibus Budget Reconciliation Act ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), which was contained within the 1987 OBRA, and the implementing regulations thereof, found at 42 C.F.R. § 483, *et seq.,* clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

50. The Defendants' actions, individually and/or collectively, and in derogation of the above statute and regulations, deprived Mr. Richards of those rights by, *inter alia*:

   a. Failure to Inform Mr. Richards of Care Changes: Failing to fully inform Mr. Richards of any changes in care or treatment affecting his well-being, including his total health status and any significant changes in physical, mental, or psychosocial conditions, as required by 42 C.F.R. § 483.10 and 42 U.S.C. § 1396r(b)(1)(A).

   b. Failure to Accommodate Needs and Preferences: Failing to provide reasonable accommodations for Mr. Richards' individual needs, preferences, and dignity, and failing to maintain an environment promoting his quality of life and psychosocial well-being, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(1)(A).

   c. Failure to Operate Efficiently for Well-Being: Failing to ensure the facility was operated efficiently to maintain the highest practicable physical, mental, and psychosocial well-being of Mr. Richards, including providing sufficient, appropriately skilled staff and resources, as required by 42 C.F.R. § 483.70, 42 U.S.C. § 1396r(d)(A), 42 U.S.C. § 1396r(d)(1)(A), and 42 U.S.C. § 1396r(d)(1)(C).

   d. Failure to Comply with Laws and Professional Standards: Failing to comply with applicable federal, state, and local laws, regulations, and accepted professional standards in the care and treatment of Mr. Richards, as required by 42 U.S.C. § 1396r(d)(4)(A) and 42 C.F.R. § 483.75.

   e. Failure to Develop and Review Plan of Care: Failing to develop, periodically review,

and update a comprehensive Plan of Care for Mr. Richards, including addressing his dietary, pharmaceutical, nursing, and rehabilitation needs, as required by 42 C.F.R. § 483.21 and 42 U.S.C. § 1396r(b)(2)(A).

f. Failure to Provide Adequate Services: Failing to provide adequate and effective services for Mr. Richards, including pharmaceutical services, activities, nursing, and social services, to support his highest practicable well-being, as required by 42 C.F.R. § 483.24, 42 U.S.C. § 1396r(b)(3)(A), and 42 U.S.C. § 1396r(b)(4)(A)(ii).

g. Failure to Maintain Safe Environment: Failing to maintain a safe, clean, and comfortable environment, ensuring food and drink met nutritional needs and were provided in a manner consistent with Mr. Richards' preferences, as required by 42 C.F.R. § 483.35, 42 U.S.C. § 1396r(b)(4)(B), and 42 U.S.C. § 1396r(b)(6)(C).

h. Failure to Provide Sufficient Qualified Staff: Failing to provide sufficient qualified staff to meet the physical, mental, and psychosocial needs of residents, including Mr. Richards, and to monitor the quality of care provided by staff, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396r(b)(4)(C).

i. Failure to Supervise and Maintain Clinical Records: Failing to ensure proper supervision and monitoring of staff, and to maintain proper clinical records, including Plans of Care and risk assessments, as required by 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(b)(6)(C).

j. Failure to Ensure Proper Administration: Failing to operate Holladay Healthcare in compliance with relevant regulations and ensuring its administrator and staff were qualified, properly certified, and providing effective oversight, as required by 42 U.S.C. § 1396r(f)(4), 42 U.S.C. § 1396r(d)(1)(C), and 42 C.F.R. § 483.70.

51. The foregoing violations indicate that Defendant Holladay Healthcare, as a policy and/or custom and practice was deliberately indifferent to Mr. Richards' needs, and as such, and in conjunction with other conduct described herein, deprived her of federally and state guaranteed and protected rights.

52. The Defendants' actions were intentional, willful, and in reckless disregard for Mr. Richards' rights.

53. As a result of the Defendants' unlawful actions, Mr. Richards suffered damages including, but not limited to, rights' violations, mental status changes, lacerations, contusions,

pain, suffering, loss of dignity and respect, diminished quality of life, all of which caused or contributed to cause his premature death.

54. Defendants Beaver City and Beaver Valley Hospital, through its agents and employees, acted under color of state law to deprive Mr. Richards of his rights to adequate medical care and protection from harm.

55. As a result of the Defendants' unlawful actions, Mr. Richards suffered damages including, but not limited to, rights violations, mental status changes, pain, suffering, discomfort, loss of dignity and respect, diminished quality of life, etc., all of which caused or contributed to his premature death.

## Count II: Health Care Malpractice
**(Against Olympus Health, Inc. dba Holladay Healthcare Center, Ensign Healthcare, Inc., Ensign Services, Inc., and The Ensign Group, Inc.)**

56. Plaintiffs refer to and incorporate the preceding paragraphs as though set forth fully herein.

57. The corporate defendants are liable under vicarious liability and direct negligence for:

   a. Failure to maintain appropriate policies and procedures for managing high-risk patients with known risk factors for impaction and sepsis.

   b. Failure to train staff to recognize and respond to life-threatening conditions.

   c. Failure to ensure proper staffing levels to adequately care for residents.

   d. Failure to transfer a patient experiencing critical symptoms, leading to delayed treatment and preventable death.

58. As a direct and proximate result of the Defendants' negligence, Mr. Richards

sustained damages including pain, suffering, physical and mental distress, and premature death. Plaintiffs' heirs suffered damages including the loss of Mr. Richards' care, comfort, society, aid, love, and support.

### Count III: Healthcare Malpractice
### (Against Mary Jean Walker, APRN)

59. Plaintiffs refer to and incorporate the preceding paragraphs as though set forth fully herein.

60. Nurse Practitioner Mary Jean Walker deviated from accepted medical standards by:

   a. Failing to timely address and treat Mr. Richards' constipation and dehydration.

   b. Discontinuing MiraLAX and Senna without a sufficient replacement, worsening his condition.

   c. Failing to recognize and act on critical warning signs such as extreme weight gain, severe hypotension, and confusion.

   d. Failing to timely order a hospital transfer, despite clear signs of organ failure and sepsis.

61. As a direct and proximate result of the Defendant Walker's negligence, Mr. Richards sustained damages including pain, suffering, physical and mental distress, and premature death. Plaintiffs' heirs suffered damages including the loss of Mr. Richards' care, comfort, society, aid, love, and support.

### Count IV: Negligence

62. Plaintiffs refer to and incorporate the preceding paragraphs as though set forth fully herein.

63. At all relevant times, Mr. Richards was lawfully upon the premises of Defendants'

nursing facility.

64. Defendants owed Mr. Richards common law and statutory duties of reasonable care and supervision.

65. Defendants were a common carrier and as such, owed facility residents, including Mr. Richards, a non-delegable duty of care.

66. Defendants owed Mr. Richards a duty to protect him from reasonably foreseeable harms.

67. Defendants breached these duties, including, but not limited to, as described above, and below.

68. Defendants knew or should have known of the risk of harm their business decision to understaff their nursing facility posed to Mr. Richards.

69. Defendants know about the risk of harm to residents because Holladay Healthcare Center has been cited for the following violations:

   a. Failing to report abuse and neglect (F0609) (Sep. 2023);

   b. Failing to respond to abuse and neglect (F0610) (Sep. 2023);

   c. Quality of Life and Care Deficiency (F0688) (Nov. 2023);

70. Defendants were aware of Mr. Richards' vulnerability based on his medical conditions.

71. Despite their knowledge of the risk, Defendants failed to protect Mr. Richards from known risks of harm resulting from understaffing their nursing facility.

72. Defendants failed to take reasonable measures to prevent Mr. Richards from harm. This failure directly and proximately increased the risk of harm to Mr. Richards and includes failing to appropriately staff their nursing facility, failing to supervise residents in the facility, failing to supervise

facility staff, failure to train facility staff, failure to implement and enforce policies and procedures necessary for resident health and safety, failure to appropriately budget for staff and resources, and failing to intervene when it was known or should have been known that the facility was understaffed.

73. As a direct and proximate result of the Defendants' negligence, Mr. Richards sustained damages, specifically, pain and suffering, physical, emotional, and psychological distress, and premature death. Mr. Richards' surviving heirs have suffered loss of his love, care, affection, future support, and services as a result.

### Count V: Wrongful Death

74. Plaintiffs refer to and incorporate the preceding paragraphs as though set forth fully herein.

75. As a direct result of Defendants' actions and omissions, Mr. Richards suffered unnecessary pain, sepsis, and death.

76. His surviving family members have suffered economic and emotional damages, including loss of companionship and medical expenses.

77. As a direct and proximate result of the Defendants' negligence, Mr. Richards' heirs suffered damages from his wrongful death including the loss of Mr. Richards' care, comfort, society, aid, love, and support.

### Count VI: Personal Injury Survival Action Under Utah Code §§ 78B-3-106 – 107

78. Plaintiffs refer to and incorporate the preceding paragraphs as though set forth fully herein.

79. Pursuant to Utah Code §§ 78B-3-106 and 107, Plaintiff Susan Richards, as Personal Representative of the Estate of James Richards, brings this personal injury survival cause of action

against Defendants for their wrongful conduct, negligence and/or neglect.

80. Mr. Richards suffered physical, mental, and emotional pain and suffering associated with the final moments or his life because of the inability to receive medical care when needed, his resultant death, loss of capacity for the enjoyment of life, and other non-economic damages due to Defendants' wrongful conduct, negligence, and/or neglect.

81. Mr. Richards' Estate is entitled to damages in an amount to be determined at trial.

### Count VII: Violation of Resident Rights Under Utah Code § 26-21-201

82. Plaintiffs refer to and incorporate the preceding paragraphs as though set forth fully herein.

83. Mr. Richards, as a resident of Holladay Healthcare Center, was entitled to dignified, adequate, and timely medical care.

84. Defendants violated his rights under Utah law by failing to:

   a. Provide essential hydration and nutrition.

   b. Ensure timely medical intervention.

85. Transfer him to a higher level of care when his condition required hospitalization.

86. As a direct and proximate result of the Defendants' negligence, Mr. Richards sustained damages, specifically, pain and suffering, physical, emotional, and psychological distress, and premature death. Mr. Richards' surviving heirs have suffered loss of his love, care, affection, future support, and services as a result.

87. Plaintiffs are entitled to damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand judgment for damages against Defendants as follows:

1. For an award of general, special, and exemplary damages in amounts to be proven at trial.

2. For an award of the value of past and future medical care and treatment in an amount to be determined at time of trial.

3. For out-of-pocket costs, loss of capacity, and other consequential damages in an amount to be established at time of trial.

4. For costs of court and interest as allowed by law; and

5. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all causes of action for which a jury is permitted.

DATED this 25th day of March, 2025.

**EISENBERG LOWRANCE LUNDELL LOFGREN**

/s/ *Ryan M. Springer*
Ryan M. Springer

Plaintiff's Address:
Susan Richards
c/o Eisenberg Lowrance Lundell Lofgren
1099 W. South Jordan Parkway
South Jordan, UT 84095